# IN THE COURT OF APPEALS OF IOWA

No. 22-1532
Filed February 8, 2023

IN THE INTEREST OF E.A. and B.A.,
Minor Children,

T.A., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Romonda Belcher,

District Associate Judge.

        A mother appeals the termination of her parental rights to two children.

**AFFIRMED.**

        Adrienne Loutsch of Benzoni & Maffitt Law Office, P.L.C., Des Moines, for

appellant mother.

        Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until

withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

        Richelle Marie Mahaffey of the Assistant State Public Defender, Des

Moines, attorney and guardian ad litem for minor children.

        Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

T.A. appeals the termination of her parental rights to two children, E.A. and B.A. She maintains that the ground for termination was not satisfied, reasonable efforts were not provided, and termination is not in the best interests of the children. Upon our de novo review, we affirm termination of her parental rights to both children.

## I.   *Background Facts and Proceedings.*

E.A. and B.A. were born in 2016 and 2017, respectively. The Iowa Department of Health and Human Services became involved in their lives in July 2020 due to allegations of physical abuse by their father. The allegation of physical abuse due to spanking was not confirmed, but denial of critical care was confirmed because the father shoved E.A. down and caused injuries to his mouth, including cuts on his lips and swollen gums. The incident allegedly began due to difficulty managing E.A.'s behaviors. E.A. has special needs as a child diagnosed with autism, attention-deficit/hyperactivity disorder, and possible adjustment disorder. B.A. has also been diagnosed with developmental delays relating to speech and physical markers. B.A.'s medical summary reflects in-utero exposure to marijuana and methamphetamine.

In August, law enforcement responded to the home after the mother's reported suicide attempt. She reported overdosing on medication but later stated it was an accident. Hospital staff indicated that this was not the mother's first attempt. The children remained in the home throughout this time.

In February 2021, the department confirmed a second child-protective investigation assessment after the children (then four and three years old) were

found playing outside near the street while their mother was asleep inside. She reportedly took some medication for back pain that caused her to fall asleep. Safety planning was instituted, and the mother was advised to find other appropriate childcare if she was going to take such medication. Shortly thereafter, the mother took E.A. to the hospital for suspected ingestion of her medication because he chewed the caps off some of her bottles. The department reported that the parents were trying to get rid of medication before caseworkers arrived in the home. Lab testing indicated that E.A. had not actually ingested the medication.

On March 1, the mother followed through with ongoing recommendations to complete a mental-health evaluation. That same month, E.A. and B.A. were adjudicated children in need of assistance (CINA) and removed from their parents' care. The father resided in another home unsuitable for the children but checked in often when he was not working. He was gone long hours for his job as a truck driver. The parents were unable to identify suitable relatives or other supportive individuals to assist them with childcare or take in the children, so the children were placed in foster care together.

At an adjudication hearing in May, prospects for returning the children home seemed promising. The parents purchased a lockbox for medication and placed locks on kitchen cabinets. The mother reported she was attending mental-health therapy every other week and medication management on a monthly basis. She set up protective daycare and attended supervised visits twice weekly. Wishing to see a longer period of compliance before returning the children home, the court continued their adjudication as CINA and maintained placement in foster care.

In June, the caseworker explained that visits still had not progressed beyond full supervision because she learned after the last hearing that the mother had only seen her therapist a handful of times without consistency. The mother reported that she recently switched therapists in order to be seen more frequently. The mother later completed the SafeCare program in September. She was reduced to weekly visits in November due to attendance issues. After consistent attendance at virtual visits, the mother's visits were increased to twice weekly in January 2022.

The next substantive hearing was held in January. At that time, the department requested the mother reengage in therapy because she had been discharged for lack of attendance. She was diagnosed with posttraumatic stress disorder and major depressive disorder. The department reported that the mother had been inconsistent with her visits, which were reduced, and that she had become escalated with providers and unable to self-regulate. The department recommended separate parental visitation due to allegations of domestic abuse. The mother reported domestic violence but then recanted and said that it was just in retaliation to the father reporting that she had broken his things and poured sugar in his gas tank. The parents continued to visit together on Sundays—the only day the father had off work.

Throughout this case, the mother's behavior has been described as erratic and inconsistent. She threatened to leave the state with the children, threatened to sue and press harassment charges against the department, and waffled on her agreement to the safety plans. In January 2022, she reported being sexually assaulted in her home and involuntarily given methamphetamine. The

caseworker, who was not initially assigned to this case, testified that she did not observe any behavioral indicators of methamphetamine use and never asked the mother to complete a substance-abuse evaluation. In April, a woman was living with the mother who was deemed to be unsafe due to a long criminal history involving drugs, burglaries, and assault as recently as 2021. There were reportedly other unknown individuals living at the home who left tires in the garage and refused to move them.

On April 5, the State filed a petition for termination of both parents' parental rights. Prior to the termination hearing, the mother rescinded her releases for the department's access to information concerning her mental-health treatment. Information obtained before rescission reflected her therapist's concern for a delusional disorder and recommendation that visitation continue to be supervised.

A combined hearing on permanency and termination was held over the course of two days: May 26 and August 1. Circumstances worsened between these dates. Shortly after the first day of the hearing, the parents had an altercation in which the mother threw the father's phone out of a vehicle, proceeded to ram the vehicle (belonging to the father) into another of the father's vehicles, and later aimed the vehicle at the father and drove in his direction. When police arrived, the mother reported having taken several pills and was taken to a hospital. At the hospital, she had an altercation with multiple nurses resulting in an assault charge. She reportedly pled guilty to disorderly conduct for the nurse incident and has a pending charge for domestic abuse assault against the father. She was incarcerated for two weeks in July on the domestic abuse charge before being granted pre-trial release. The mother cancelled and missed several visits over the

summer due to lack of transportation, illness, and incarceration. An update on her therapy was unavailable for the second day of hearing. She had reported an intent to re-sign the release of information, but it was unclear whether she had done so.

The father voluntarily consented to termination of his parental rights to both children on the second day of the hearing and does not appeal. The guardian ad litem testified in support of termination. The court entered an order terminating the mother's parental rights to both children on September 6. She filed a timely appeal.

## II.    Review.

Our review of termination proceedings is de novo. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *C.B.*, 611 N.W.2d at 492.

## III.    Discussion.

The principal concern in termination proceedings is the children's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73.

*A. Grounds for Termination.*

The mother contends the court relied on erroneous facts not admitted in the record, which violated her right to due process and resulted in an improper termination of her parental rights under paragraph (f) of Iowa Code section 232.116(1) (2022). The court may terminate under section 232.116(1)(f) if it finds:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The fourth element alone is in dispute: whether the child could be returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

The first allegedly erroneous fact is that of the mother's positive drug test for THC in December 2020. This information was included in reports to the court from the department. The court referenced this fact during the removal hearing in March 2021. No challenges were raised to the alleged fact until the termination hearing over one year later. In fact, the mother's attorney initially acknowledged the drug test as fact during her questioning of the caseworker at the termination hearing:

> Q. Again, going to the sweat patch, has there been any other drug testing of [the mother] other than this positive sweat patch that was referred to?  A. The one in the legal summary for marijuana?
> Q. Correct.  A. No.
> Q. Okay. Are—Is illegal drug use you [sic] concern regarding [the mother] at this time?  A. No.

However, the mother denied the drug test in direct questioning on the second day of the termination hearing:

> Q. Has [the department] ever asked you to do any drug testing?  A. No.
> Q. And do you know why [the department] would say that you had a positive sweat patch for THC?  A. No, I do not.
> Q. Okay. To your knowledge, were you drug tested on December 28, 2020?  A. No, I was not.
> Q. Has [the department] ever expressed concern about your drug use before?  A. No, they have not.

On appeal, the mother claims that the caseworker "stated the information regarding the drug screens in the report may have been copied from a previous report and may not be completely accurate."  However, we find no record evidence to support this contention.  In any event, the record makes clear that illicit drug use was not a concern for the department or a motivating factor for the termination.  The sweat patch was mentioned in the court's termination order among a litany of case facts.  Based upon the mother's issues with mental health and supervision, we find there is clear and convincing evidence that the children cannot be returned to her care independent of any positive THC test in December 2020.

The mother also argues "[t]he findings that [she] does not share a strong bond with the children and that she lacks understanding of the expectations of fulltime parenting are clearly erroneous and cannot be part of the basis to terminate [her] parental rights."  However, there is clear and convincing evidence to support the court's fact findings in this regard.  The mother's visits were inconsistent, ended

early, reflected her inability to manage E.A.'s behaviors, and continue to be fully supervised. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("Without this necessary progression [from supervised to unsupervised visits], we cannot say the children could have returned to the mother's care."). Her mental-health issues continued to escalate even after the first day of the termination hearing, leading to hospitalization for reportedly taking several pills and incarceration for assaultive behavior. "Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). These circumstances further support our concurrence with the juvenile court's ruling. We affirm its conclusion that clear and convincing evidence established the children could not be returned to their mother's care.

*B. Reasonable Efforts.*

The mother argues the department did not make reasonable efforts at reunification because she was not allowed to progress from supervised to semi-supervised visitation. *See* Iowa Code § 232.102(7) (requiring the department "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). Under Iowa law, the State must establish reasonable efforts were made in connection with proving the children cannot safely be returned to their parent's care. *C.B.*, 611 N.W.2d at 493. Reasonable efforts may include, but are not limited to, finalizing a permanency plan and offering family-centered services. Iowa Code § 232.102(10)(a). In evaluating whether reasonable efforts have been made, our courts consider "the type, duration, and intensity of services or support offered or provided" and the

"relative risk to the child of remaining in the child's home versus removal of the child." *Id.* § 232.102(10)(a)(1), (2).

"The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (citation omitted). Although the mother repeatedly requested that visits progress to semi-supervised, this decision was left to the discretion of the department. At the time of the termination hearing, the mother's therapist continued to recommend that visits be supervised. The mother was involuntarily committed twice during the course of this case upon being deemed a danger to herself or others. She failed to consistently attend the fully-supervised visits she was offered and reportedly ended visits early.

At the same time, reasonable efforts to prevent or eliminate the need for removal included: child protective assessments, family-centered services, SafeCare, family preservation services, safety planning, relative exploration, individual therapy, behavioral health intervention services (BHIS), school-based therapy, medication management, psychiatric services, gas cards, Early ACCESS, protective daycare, flex funds, foster care, and department case management. We find the agency's decision not to reduce supervision for the mother's visits reflects its balancing of the permanency goal with its paramount concern for the children's health and safety. *See* Iowa Code § 232.102(10)(a) ("A child's health and safety shall be the paramount concern in making reasonable efforts."). In light of the risks presented by the mother's unstable mental health and the department's extensive

offering of services, we find the agency satisfied its obligation to make reasonable efforts toward reunification. We affirm the juvenile court's finding in this regard.

### C. Best Interests.

In determining best interests, we look to the framework described in Iowa Code section 232.116(2), which requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." The "defining elements" of the best-interests analysis are the children's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). Here, the mother has not adequately addressed her mental health, and there continue to be concerns regarding her mood swings and aggressive behavior. "[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474. "The 'legislature has established a limited time frame for parents to demonstrate their ability to be parents.'" *Id.* (citation omitted). On this record, we find termination of their mother's parental rights is in the best interests of both children.

### IV. Disposition.

Having concluded E.A. and B.A. cannot be returned to their mother's care, reasonable efforts were provided, and termination is in their best interests, we affirm termination of their mother's parental rights.

**AFFIRMED.**